(112 So. 357)

UNITED DRUG CO. v. GRAMLING–BELCHER DRUG CO. (7 Div. 729.)

Supreme Court of Alabama. April 14, 1927.

1. Partnership ⬦125—Statute stating general powers of partners does not change common law (Code 1923, § 9375).

Code 1923, § 9375, stating general powers of partners to bind firm, does not effect any change in the pre-existing common law on that subject.

2. Partnership ⬦129—"Whatever is necessary," in statute stating powers of partners to bind firm, is equivalent to "whatever is usual or appropriate" (Code 1923, § 9375).

The phrase "whatever is necessary," in Code 1923, § 9375, stating the general powers

of partners to bind the firm, means no more nor less than "whatever is usual or appropriate" in the conduct of the business.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary.]

3. Partnership ⬦146(1) — Each member of mercantile partnership is general agent of firm, with implied authority to sign and indorse notes in course of business.

Each member of a mercantile partnership is general agent of the firm in all transactions, within the scope of the business, with implied authority to make and indorse promissory notes in the name of the firm in the course of the partnership business.

4. Partnership ⬦217(1)—Burden is on commercial partnership to show partner borrowing money in firm name did not act for partnership purpose.

The burden is on a commercial partnership to show that act of partner in borrowing money in the firm name was not, as it is presumed to have been, for a partnership purpose.

5. Partnership ⬦146(2)—Individual partner's refusal to sign notes could not per se avoid firm's liability, where other partner signed for firm.

Fact that partner disapproved proposed contract and personally refused to sign notes pursuant thereto could not per se avoid liability of partnership on notes given for firm by the other partner.

6. Partnership ⬦218(3)—Buying line of drugs held not outside drug store partner's authority, as matter of law.

Buying and handling a line of drugs held not outside the scope of authority of a general manager of a drug store partnership, as a matter of law.

7. Partnership ⬦146(2)—Partner in drug firm held not protected by notice of refusal to sign notes for drugs, where he could not say when notice was given.

Notice by partner in drug firm to seller that he would not sign notes for drugs would not protect him on firm notes, signed by the other partner, where he could not say whether the notice was before or after the notes were signed.

Appeal from Circuit Court, Cherokee County; W. W. Haralson, Judge.

Action by the United Drug Company against J. W. Gramling and I. P. Belcher, doing business as the Gramling-Belcher Drug Company. From a judgment for defendant, plaintiff appeals. Transferred from Court of Appeals, under Code 1923, § 7326. Reversed and rendered.

The action is on 8 promissory notes, payable to the plaintiff, and purporting to have been executed by "Gramling–Belcher Drug Company, by I. P. Belcher."

The evidence shows that the Gramling-Belcher Drug Company was a commercial

---

partnership, composed of J. W. Gramling and I. P. Belcher, the parties defendant hereto, and that these notes were executed in the firm name by I. P. Belcher.

The defendant Gramling stated in his statutory answers:

"Under the terms of partnership, Belcher was to have general management of business, make ordinary purchases and sales, keep the books, but not to execute any and all contracts, and not to assume all managerial duties nor powers. I looked more or less after the strictly drug part of the business. * * * I know nothing of the execution of such a contract (to handle plaintiff's Rexall products). I know nothing more than that a lot of merchandise was received, and I learned they came from the United Drug Company."

On the trial Gramling testified:

"All I know about these notes in this case is that Belcher asked me what I thought about handling this stuff, Rexall, I believe they call it, and there was some kind of a contract to be made. I don't remember seeing the contract, and we were to give some notes, and I refused to sign the notes. * * * There was some goods there he said was Rexall goods some time after that. These were disposed of by the firm, or a part of them. I notified the agent of the plaintiff that I wouldn't sign the notes. I refused to do it. I don't know whether this was at the time the notes were signed or not. * * * I did not admit (to plaintiff's attorney) knowing anything about this more than that they had the goods in the store. We all knew the goods were there. I didn't know anything about how they got there until this came up."

This being substantially the evidence in the case, the trial court, sitting without a jury, rendered judgment in favor of defendant, and plaintiff appeals.

Shelton Street, of Gadsden, for appellant.

A partner of a firm has authority to bind the firm by the execution of notes for the purchase price of property going into the business. Letson v. Hall, 1 Ala. App. 619, 55 So. 944; Code 1923, § 9375.

F. M. Savage, of Centre, for appellee.

Belcher had no authority to bind the firm or the other partner in this case, and the agent of plaintiff had notice of Belcher's lack of authority and of the other partner's refusal to sign. Code 1923, §§ 9376, 9377.

SOMERVILLE, J. We infer from the briefs of counsel that judgment was rendered for defendant by the trial court on the theory that his copartner, Belcher, was without authority to bind him by executing the notes in question in the name of the partnership, either because giving the notes was not necessary to carrying on the business in the ordinary manner (Code 1923, §§ 9375, 9376), or because defendant himself refused to sign the contract or the notes given pursuant thereto, when Belcher talked with him about it and proposed it, or because defendant notified plaintiff's agent that he would not sign the notes.

Section 9375 of the Code declares:

"Every general partner is agent for the partnership in the transaction of its business, and has authority to do whatever is necessary to carry on such business in the ordinary manner, and for this purpose may bind his copartners by an agreement in writing."

Section 9376 enumerates the things a partner, as such, may not do, including:

"(7) To do any other act not within the scope of the preceding section."

[1, 2] We do not understand that section 9375 of the Code, supra, in stating the general power of partners to bind the firm, effects any change in the pre-existing common law on that subject. It deals, of course, with implied powers, and the phrase "whatever is necessary" means no more nor less than "whatever is usual and appropriate" in the conduct of the business.

[3] "It is a legal consequence of all mercantile partnerships, that each partner is the general agent of the firm, in all transactions within the scope of its business. Within the range of its ordinary business, his acts and engagements are as binding on the firm, as if all the members had united in them. * * * Each partner has an implied authority to make or indorse promissory notes in the name of, and binding on the firm, if they are made or indorsed for the benefit of the partnership, in the course of the partnership business." Hurt v. Clarke, 56 Ala. 19, 22, 23, 28 Am. Rep. 751; Mauldin v. Branch Bank, 2 Ala. 502, 511; 20 R. C. L. 882–884, § 94; Id. 901, § 112.

[4] And "in the case of a commercial partnership it is always presumed that when a member of a firm borrows money, or gives a note in the name of the firm, the transaction is for a partnership purpose, and the burden of proof is on the firm to show the contrary, and a contract made by a partner in the name of the firm is prima facie binding on the firm unless it is made outside of the firm business." 20 R. C. L. 892, § 103, citing numerous cases; note to Baxter v. Rollins [Iowa] 48 Am. St. Rep. 439. As said by this court in Knapp v. McBride, 7 Ala. 19, 27: "Where a note made by one partner in the name of the firm is put in suit, it is not incumbent on the plaintiff in the first instance to show that the note was given for a partnership transaction. It will be intended to have been made in the course of partnership dealings; and [if the contrary is true] * * * these facts must be shown in the defense by the party taking advantage of them."

[5] The fact that Gramling disapproved the making of the contract with plaintiff, and

personally refused to sign the notes, could not per se avoid the liability of the partnership on the notes given by Belcher.

But defendant relies on another principle:

"Both in England and the United States, there are cases which assert the general proposition, that a partner may protect himself against the consequences of a future contract, by giving notice of his dissent to the party with whom it is about to be made. * * * And where the firm consists of but two persons, and there *is nothing in the articles* to prevent each from having an equal voice in the direction and control of the common business, the correctness of the proposition cannot be questioned [italics supplied]." Johnston v. Dutton's Adm'r, 27 Ala. 245, 252.

[6] One trouble with defendant's contention here is that, under the articles of partnership, his copartner, Belcher, was to have the general management of the business and make ordinary purchases and sales. There is nothing to indicate that the buying and handling of the Rexall goods was outside the scope of the general management of a drug store, or that it was an extraordinary undertaking for such a business.

In the case of Johnston v. Dutton, supra, further discussing the principle just above quoted, the court said:

"It is in strict analogy with the civil law, which holds where the stipulations of the partnership expressly intrust the direction and control of the business to one of the partners, that the dissent of the other would not avail, if the contract was made in good faith; * * * and such also, we think, is the rule of the common law. * * * Were it otherwise, it would be denying to parties the right to make their own contracts. If our views as to the governing force of express stipulations are correct, the effect of such terms or conditions as result by clear implication from the articles, or arise out of the nature of the partnership, must be the same."

Defendant's testimony shows very clearly the division of managerial authority between the partners, and that Belcher was expressly authorized to buy the goods to be handled and sold in the partnership business.

[7] Again, while defendant says he notified plaintiff's agent that he would not sign the notes, he does not say or know when that was, whether before or after the contract of purchase was made by Belcher, or even before Belcher had signed the notes for the firm. On his own showing, therefore, he has not brought himself within the principle relied on.

It is very doubtful, also, if notifying the agent merely that he would not sign the notes himself, without dissenting from the contract about to be made or the notes proposed to be executed by the partnership, would be sufficient to avoid liability as a partner.

The application of the foregoing principles and conclusions to the undisputed facts in the case lead to the conclusion that the judgment for defendant was erroneous, and should have been for plaintiff for the amount of the notes sued for. A judgment will be here rendered accordingly.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.